UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ARYAN MAHMOUDPOUR, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | SA-25-CV-1877-FB (HJB) |
| | § | |
| PAMELA JO BONDI, United States Attorney | § | |
| General; KRISTI LYNN NOEM, Secretary of | § | |
| Homeland Security; SYLVESTER M. | § | |
| ORTEGA, San Antonio Acting Field Office | § | |
| Director for Detention and Removal, U.S. | § | |
| Immigration and Customs Enforcement; and | § | |
| BOBBY THOMPSON, Warden, South | § | |
| Texas ICE Processing Center, | § | |
| | § | |
| Respondents. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Petitioner Aryan Mahmoudpour's Petition for Writ of Habeas Corpus (Docket Entry 1.)  The petition was referred to the undersigned for consideration pursuant to 28 U.S.C. § 636(b)(1).  (S*ee* Docket Entry 5).  For the reasons set out below, I recommend that the petition (Docket Entry 1) be **GRANTED IN PART** and **DENIED IN PART**,[1] and that Petitioner be released from Respondents' custody.

---

[1] The Petition should be denied in part because Petitioner seeks an award of attorney's fees and costs, under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (*See* Docket Entry 1, at 13). The Fifth Circuit has unequivocally stated that the EAJA "does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions." *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 553 (2024).

## I.    Jurisdiction.

The Court has jurisdiction pursuant to 28 U.S.C. § 2241.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . . challenges to the lawfulness of . . . . continued custody after a deportation order ha[s] become final.") (emphasis omitted).   The undersigned has jurisdiction to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b).

## II.    Background.

The facts in this case are largely undisputed.   Petitioner is a citizen of Iran.   (Docket Entry 1, at 2; Docket Entry 6, at 1.)   He entered the United States unlawfully on May 18, 2024.   (Docket Entry 6, at 2.)   On May 9, 2025, an Immigration judge ("IJ") ordered that be removed from the country.   (*Id.*)   However, the IJ also granted Petitioner withholding of removal under 8 U.S.C. § 1231(b)(3) and the Convention Against Torture ("CAT"), thereby preventing Respondents from sending him back to Iran.   (*Id.*; Docket Entry 1, at 2.)   Since then, Respondents have requested permission to send Petitioner to Panama, Jordan, Mexico, the Philippines, Brazil, Armenia, and Georgia.   (Docket Entry 6-1, at 2–3; Docket Entry 17, at 1–2; Docket Entry 22, at 11–12.)   With the exception of Brazil—which, according to counsel for Respondents, has affirmatively refused to accept Petitioner—none of the solicited countries have responded to the requests.[2]   (Docket Entry 22, at 11–12.)   Petitioner has remained in DHS's custody since his order of removal became administratively final on June 11, 2025—about nine months.   (Docket Entry 1, at 1; Docket Entry 6, at 1.)

---

[2] In a subsequently filed declaration, Supervisory Immigration and Custom Enforcement Officer Sergio Vasquez stated that Brazil had not in fact refused to accept Petitioner, but that the request remained pending. (Docket Entry 23-1, at 2.)

Petitioner filed the instant petition on December 26, 2025.  (Docket Entry 1.)  He argues that, because his third-country "removal is not reasonably foreseeable," his detention is no longer permissible.  (*Id.* at 2.)  Respondents have filed a response (Docket Entry 6), and Petitioner has replied (Docket Entry 9).  The undersigned held an evidentiary hearing on March 4, 2026, at which time Respondents confirmed that there is still "no country currently designated for removal at this time."  (Docket Entry 22, at 11.)[3]

## III.    Discussion.

### A.  *Applicable Law.*

"Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-day 'removal period.'"  *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. 1231(a)(1)(A)).  During the 90-day removal period, detention is mandatory, *see id.* (citing 8 U.S.C. § 1231(a)(2)).  After 90 days, however, detention is no longer mandatory; instead "[u]pon expiration of the removal period, the Government may continue to detain certain aliens or release them under conditions of supervision."  *Abuelhawa v. Noem*, No. 4:25-cv-04128, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (citing 8 U.S.C. § 1231).

Although the statute does not specify a time limit on how long DHS may continue to detain an alien in the post-removal period, the Supreme Court has held that post-removal-period detention may last no longer than is "reasonably necessary to bring about the alien's removal," *see Zadvydas*, 533 U.S. at 689.  Recognizing that not all reasonably foreseeable removals can be accomplished within the 90-day removal period, the Court concluded that such detentions are "presumptively

---

[3] At the hearing before the undersigned, Respondents indicated that they had failed to conduct any Post Order Custody Reviews ("POCRs") as required by regulation. (*Id.* at 6.) However, in his supplemental declaration, Officer Vasquez indicated that a POCR review was conducted the day after the hearing, and that the Enforcement and Removal Operations personnel had recommended that Petitioner remain in custody. (Docket Entry 23-1, at 2.)

reasonable" for up to "six months." *Id.* at 701. "This six-month period includes the 90-day removal period." *Mogos v. Thompson*, No. 5:26-CV-740-JKP, 2026 WL 475079, at *3 (W.D. Tex. Feb. 13, 2026). Once those six months have elapsed, release is required if "there is no significant likelihood of removal in the reasonably foreseeable future." *Guzman Chavez*, 594 U.S. at 529 (citation omitted).

To make out a *Zadvydas* claim, a petitioner must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. "Good reason" is a "modest standard." *Mogos*, 2026 WL 475079, at *4. Under that standard, the petitioner "need not rule out 'any prospect of removal—no matter how unlikely or unforeseeable.'" *Id.* (quoting *Zadvydas*, 533 U.S. at 702). If the petitioner provides a good reason to doubt that he will be removed anytime soon, "the Government must respond with evidence sufficient to rebut that showing." *Id.*

In assessing whether the parties have met their respective burdens, courts have recognized an inverse relationship between the length of detention and the span of time constituting the "reasonably foreseeable" future. In other words, "as the period of prior post-removal-period confinement grows, the amount of time considered the 'reasonably foreseeable future' shrinks." *Abdulle v. Gonzales*, 422 F. Supp. 2d 774, 778 (W.D. Tex. 2006) (quoting *Zadvydas*, 533 U.S. at 701); *see also Misirbekov v. Venegas*, 796 F. Supp. 3d 436, 439 (S.D. Tex. 2025) (same).

**B.   *Analysis.***

In this case, the 90-day removal period began on June 11, 2025. (Docket Entry 1, at 1; Docket Entry 6, at 1.) Petitioner's detention therefore ceased to be mandatory under § 1231(a)(2) on September 9, 2025, and under *Zadvydas*, it ceased to be presumptively reasonable on December 8, 2025. Accordingly, the Court must determine if Petitioner's "removal is no longer reasonably

4

foreseeable"; if so, then his "continued detention is no longer authorized by [8 U.S.C. § 1231]," and he must be released.  *See Zadvydas*, 533 U.S. at 699.

Petitioner has presented good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.  *Zadvydas*, 533 U.S. at 701.  He points out that he has withholding of removal to Iran, that he "holds no other nationality or citizenship except from Iran," that he "has no ties to any other country," and that, at the time of his writing, "[f]ive countries ha[d] ignored Respondents' request to accept [him]."   (Docket Entry 9, at 2.)   These circumstances easily meet the modest "good reason" standard.  *See, e.g.*, *Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 705–06 (W.D. Tex. 2025) (finding that "good reason" was shown where alien had withholding of removal to his sole country of citizenship and ICE had "not identified a third country that w[ould] accept him"); *Puertas-Mendoza v. Bondi*, No. SA-25-CA-00890-XR, 2025 WL 3142089, at *3 (W.D. Tex. Oct. 22, 2025) ("Very few people subject to withholding of removal or CAT relief are removed from the United States," as "[f]oreign governments routinely deny requests to receive people who lack a connection to the would-be receiving country.") (citation modified); *Misirbekov v. Venegas*, No. 1:25-CV-168, 2025 WL 2450991, at *1 (S.D. Tex. Aug. 15, 2025) (finding that "good reason" was shown where alien could not be removed to his country of origin and "d[id] not have citizenship nor any ties to any other country").

As Petitioner has met his burden, the burden shifts to Respondents.  *See Zadvydas*, 533 U.S. at 701.  Their sole argument in rebuttal is that "ICE is still awaiting . . . response[s]" from some prospective recipient countries and "anticipates no impediments to removal once a travel document is issued from a third country."  (Docket Entry 6, at 5.)  At the hearing on March 4, 2026, Respondents reiterated their position; according to them, with the exception of Brazil,

5

"[e]verything remains pending." (Docket Entry 22, at 11.) Pending requests, however, do not satisfy Respondents' "burden to furnish evidence demonstrating that removal is likely in the reasonably foreseeable future." *Trejo*, 807 F. Supp. 3d 697; *see Medellin Martinez v. Bondi*, No. SA:25-CV-1319-OLG, Order at 5 (W.D. Tex. Nov. 21, 2025) ("[O]utstanding requests with [third] countries . . . [is] insufficient to show that . . . removal is likely to occur in the reasonably foreseeable future." (citation omitted)). In other words, the "potential for a travel document at some point in the future is not sufficient to justify further detention." *Fermine v. Dir. of Immigr. & Customs Enf't*, No. 2:06-cv-1578, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007) (internal marks omitted). Thus, Respondents have not met their burden of presenting evidence sufficient to rebut Petitioner's good reasons for believing that he is not likely to be removed in the reasonably foreseeable future. Accordingly, release is required under *Zadvydas*.

At the March 4, 2026, hearing, Respondents specifically requested that, if the Court reached a disposition in Petitioner's favor, the remedy should be "immediate release, not a bond hearing." (Docket Entry 22, at 20.) Respondents also requested that, should the Court order Petitioner's release, Respondents be given 48 hours to comply with the order. (*Id*. at 21.) Petitioner did not object to either request. (*Id*. at 22.) Accordingly, the Court should order Petitioner's release within 48 hours.

## IV.    Conclusion and Recommendation.

Based on the foregoing, I recommend that Petitioner's Aryan Mahmoudpour's Petition for Writ of Habeas Corpus (Docket Entry 1) be **GRANTED IN PART**, and that Petitioner be ordered **RELEASED WITHIN 48 HOURS** of the District Court's order. As previously noted, *see* n.1 *supra*, I recommend the petition be **DENIED IN PART** to the extent that it seeks attorney's fees and costs under the EAJA.

**V.    Notice of Right to Object.**

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.    While written objections to a Report and Recommendation are typically due within 14 days of a party's receipt of the same, that deadline can be modified by the Court.    28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).    At the March 4, 2026, hearing, the parties jointly requested that the period for objecting to this Report and Recommendation be reduced from 14 to seven days.    In light of the joint request, and the deprivation of liberty at issue in this case, the parties must file any written objections **within seven days** of their receipt of this Report and Recommendation.

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.    An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered."    *Williams v. Lakeview Loan Servicing LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court.    *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).    Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking

7

on appeal the unobjected-to, proposed findings and conclusions accepted by the district court.

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

      **SIGNED** on March 19, 2026.

 

_____
Henry J. Bemporad
United States Magistrate Judge